# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| QUINTEZ TALLEY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| LT. D. PRESSLEY, LAURA BANTA, JAMES MCINTEL, GENA CLARK, J. TERRA, THOMAS C. GRENEVICH, M. NASH, LT. KULL, C/O WILLIAMS, C/O BARRETTO, C/O MARTINEZ, and UNKNOWN CORRECTIONAL OFFICERS | : : : : : : | NO. 18-5196 |

## MEMORANDUM OPINION

**Savage, J.**                                                            December 13, 2018

Plaintiff Quintez Talley, a prisoner at SCI Fayette proceeding *pro se*, filed this civil action pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA") against Lt. D. Pressley, Laura Banta, James McIntel, Gena Clark, J. Terra, Thomas C. Grenevich, M. Nash, Lt. Kull, C/O Williams, C/O Barretto, C/O Martinez, and "Unknown Correctional Officers." He has also filed a Motion for Leave to Proceed *In Forma Pauperis*.

We shall grant Talley leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), we shall dismiss his complaint with leave to amend.

# FACTS[1]

On November 8, 2017, Dr. Duvall and R. Ladonne were making rounds in the Psychiatric Observation Cell ("POC")[2] area of SCI Graterford.[3] During that time, Talley "spoke with them regarding [his] concern of returning to the Diversionary Treatment Unit (DTU) on L Block, where [he] was being harassed by the 6 to 2 pm shift."[4] Talley indicates that he had expressed his concerns on prior occasions to Dr. Duvall, R. Ladonne, and defendant Major Gena Clark that he "sincerely feared returning back to the DTU because of threats he'd heard from defendant Pressley and other 6-2 personnel when they came to the POC."[5] Talley had also asked Major Clark if she could approve him to receive commissary because he was afraid to accept trays "from 6-2 shift."[6]

That same day, Talley "signed out of the POC and agreed to return to the DTU."[7] Talley alleges that, contrary to policy, no one from the Program Review Committee ("PRC")[8] "consulted with [him] prior to [his] being released from the POC."[9] He contends that "in asking to be seen by PRC, [he] merely wanted to (1) exercise the same

---

[1] The following facts are taken from the complaint. Although Talley refers to exhibits 1, 2, and 3 in his complaint, only exhibits 1 and 2 were submitted to the Court with the complaint. Exhibit 3 is therefore not part of the record.
[2] According to Talley, a POC "is defined as: 'A cell located in the infirmary area of the facility that is used to hold inmates who are mentally decompensating to the point where they are considered a danger to themselves, other inmates, and/or property. These cells provide a means of retaining the inmate, if necessary, and allow for constant supervision of the inmate to be maintained in order to treat the inmate.'" Compl. ¶ 23 (Document No. 2).
[3] *Id.* ¶ 7.
[4] *Id.*
[5] *Id.* ¶ 8.
[6] *Id.* ¶ 9.
[7] *Id.* ¶ 10.
[8] According to Talley, the PRC consists of defendants Thomas C. Grenevich, Laura Banta, Major Gena Clark, James McIntel, and Psychological Service Assistant M. Nash. *Id.* ¶ 5.
[9] *Id.* ¶ 24.

programming available to other prisoners housed in the DTU on L Block, and (2) report [his] fear of having [his] food tampered with."[10]

Talley alleges that he was escorted to a holding cell in the DTU by Lt. Henry and other correctional officers.[11] At that time, he had two boxes of his legal material with him.[12] Shortly after, Lt. Pressley, "the same Defendant person whom had instructed several correctional officers on October 20, 2017 to fabricate misconducts on [Talley], came with a handheld camera and several of the very COs from 10/20/2017."[13] Talley alleges that Lt. Pressley "made it expressly clear that [his] request to speak to the PRC had been denied."[14] Talley responded "that [he] had no problem going and where (e.g., to the DTU), but [he] wasn't going anywhere without [his] legal property, of which Defendant Clark had approved [him] for."[15] Lt. Pressley "stated both on and off camera that Defendant Clark had stated [Talley] couldn't get [his] property."[16] Talley alleges that Pressley has "a loud and antagonistic disposition" and "has made it expressly clear that she would use her power and authority to harass" him.[17]

Talley refused to leave the holding cell in the DTU if he did not have his legal property, and an extraction team was assembled to take him back to the POC.[18] Before the extraction team arrived, Talley "was on constant watch."[19] Lt. Pressley had instructed

---

[10] *Id.* ¶ 25.
[11] *Id.* ¶¶ 11, 15.
[12] *Id.* ¶ 11.
[13] *Id.* ¶ 12.
[14] *Id.* ¶ 13.
[15] *Id.* Talley states that Lt. Pressley and the PRC all knew that his legal property was important to him "because [he] requested to exercise his right, as a prisoner on the DTU, to report the adverse treatment he was being subjected to on the DTU and his fear to be on the DTU and have food served to him by DTU officers." *Id.* ¶ 26.
[16] *Id.* ¶ 14.
[17] *Id.*
[18] *Id.* ¶ 15.
[19] *Id.* ¶ 17.

defendant C/O Williams to remain by Talley.[20] During that time, another prisoner called Talley "numerous derogatory names" while Pressley, Williams, and defendant C/O Martinez "all laughed, encouraging it."[21] Talley alleges that C/O Martinez also made threats of violence.[22]

When defendant Lt. Kull and other officers arrived for the extraction, Talley told Lt. Kull that he wanted to "return back to the POC with his property."[23] Lt. Kull left "and returned shortly after with defendant Thomas C. Grenevich, who[] insisted that [Talley's] property be taken to the 'property room' instead of brought with [him] to the POC."[24] Ultimately, Talley "reach[ed] an agreement with defendant Kull that he would cooperate with the extraction if his property [was] taken with him."[25] Talley was then escorted to the dispensary "where, after Defendant Grenevich had preceded [their] arrival to the property room, Defendant Pressley arrived shortly after, antagonizing [Talley] even more."[26] Talley alleges that during the extraction, Lt. Pressley "not only made direct and indirect comments to [him], she literally placed her entire face in front of the camera and again made expressly clear that it was Defendant Clark who instructed her to withhold [his] property."[27] He contends that neither Lt. Kull nor any of the other officers "documented or made known to their superiors (1) Defendant Pressley's antagonistic behavior or (2) [that] it was causing [him] to experience emotional and psychological distress causing [him] to be admitted into the POC."[28]

---

[20] *Id.*
[21] *Id.* ¶ 18.
[22] *Id.*
[23] *Id.* ¶ 16.
[24] *Id.* ¶ 19.
[25] *Id.* ¶ 20.
[26] *Id.*
[27] *Id.* ¶ 21.
[28] *Id.* ¶ 22.

Talley claims that Lt. Pressley violated his rights under the Eighth Amendment by "(1) intentionally antagoniz[ing him]; (2) reward[ing] another prisoner and encourag[ing that prisoner] to antagonize [Talley] without any justifiable penological interest; (3) us[ing] and with[holding] his personal property as a means of punishment; and, finally, (4) follow[ing] him to the dispensary, interject[ing] in his extraction, and continu[ing] to harass [him]."[29] He also alleges that Major Clark violated his Eighth Amendment rights by failing to protect from Lt. Pressley's "ongoing 'campaign for harassment,'" even though she had been made aware of it by Talley and the PRC.[30]

Talley further contends that all the defendants violated his equal protection rights under the Fourteenth Amendment by denying him the right to have his weekly meeting with the PRC.[31] He also alleges that all the defendants violated his due process rights under the Fourteenth Amendment by denying him the opportunity to "(1) speak to PRC and address his concerns regarding what he was being subjected to in the DTU, and (2) be seen by PRC before being sent back to the DTU after being cleared by psych from the POC, (3) undermining [his] ability to be heard at a meaningful time, in a meaningful manner."[32] Finally, Talley contends that Lt. Pressley is liable for causing intentional infliction of emotional distress.[33] Talley seeks a declaration that his rights were violated, an injunction "compelling all of the herein named L Block PRC Defendants . . . to deem Defendant Pressley unfit to be working with inmates on the mental health roster, and remove her from 'L' Block," and damages.[34]

---

[29] *Id.* ¶ 28.
[30] *Id.* ¶ 29.
[31] *Id.* ¶ 30.
[32] *Id.* ¶ 31.
[33] *Id.* ¶ 32.
[34] *Id.* ¶¶ 33-35.

**STANDARD OF REVIEW**

Talley is granted leave to proceed *in forma pauperis* because it appears that he is not capable of paying the fees to commence this civil action.[35] Because he is proceeding *in forma pauperis*, we must screen the complaint and dismiss it if it fails to state a claim. 28 U.S.C. § 1915(e)(2)(B)(ii). To survive dismissal, the complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "[M]ere conclusory statements[] do not suffice." *Id.* Because Talley is proceeding *pro se*, we construe his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

**DISCUSSION**

**A. Claims for Declaratory and Injunctive Relief**

"An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims." *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003). Here, Talley's request for injunctive relief against the PRC defendants is moot because the individual defendants worked at SCI Graterford and Talley is now incarcerated at SCI Fayette.[36] *See Randolph v. Rodgers*, 253 F.3d 342, 346 (8th Cir. 2001) ("The actions required by an injunction would be impossible for those four defendants to execute; their authority and power is limited solely to PCC, and any injunctive relief would necessarily be directed at accessibility to hearing-impaired services at JCCC."). Even if Talley's claims for declaratory relief were not moot, he cannot prevail because "[d]eclaratory

---

[35] However, as Talley is a prisoner, he will be obligated to pay the $350 filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).
[36] Since Talley's confinement, SCI Graterford is no longer operational and the inmates at that prison were relocated to SCI Phoenix. Even if the individual defendants are employed at SCI Phoenix, they have no authority over Talley because he is incarcerated at SCI Fayette.

6

judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."  See *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (per curiam) (citing *Brandon E. ex rel. Listenbee v. Reynolds*, 201 F.3d 194, 197-98 (3d Cir. 2000) and *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1553-54 (Fed. Cir. 1994) (en banc)); *see also Andela v. Administrative Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (per curiam) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct.").

### B. Americans with Disabilities Act

"Title II of the Americans with Disabilities Act of 1990 (ADA), which prohibits a 'public entity' from discriminating against a 'qualified individual with a disability' on account of that individual's disability, covers inmates in state prisons."  *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 208 (1998) (quoting 42 U.S.C. §§ 12131, 12132) (internal quotations omitted). Although the Third Circuit has not addressed the issue precedentially, most courts "have held that Title II does not authorize suits against government officers in their individual capacities."  *Williams v. Hayman*, 657 F. Supp. 2d 488, 502 (D.N.J. 2008); *see also Bowens v. Wetzel*, 674 F. App'x 133, 136 (3d Cir. 2017) (per curiam) ("[T]he District Court could have properly followed the holdings of those circuits which have concluded that there is no individual damages liability under Title II of the ADA, which provides an additional basis to affirm the dismissal of this claim.").  Here, Talley has only sued individual officers.  Therefore, his ADA claims will be dismissed.

### C. Section 1983 Claims

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The facts pled by Talley do not establish a plausible constitutional violation.

#### 1. Eighth Amendment Claims

Talley alleges that Lt. Pressley violated his Eighth Amendment rights by antagonizing and harassing him, encouraging another prisoner to antagonize him, and withholding his personal property.[37] He also contends that Major Clark violated his Eighth Amendment rights by failing to protect him from Lt. Pressley's "ongoing 'campaign of harassment.'"[38]

"Verbal harassment of a prisoner, although distasteful, does not violate the Eighth Amendment." *Washington v. Rozich*, 734 F. App'x 798, 801 (3d Cir. 2018) (per curiam) (citations omitted); *see also Brown v. Hamilton Police Dep't*, No. 13-260, 2013 WL 3189040, at *2 (D.N.J. June 21, 2013), *aff'd sub nom. Brown v. Hamilton Twp. Police Dep't Mercer Cty., N.J.*, 547 F. App'x 96 (3d Cir. 2013); *Maclean v. Secor*, 876 F. Supp. 695, 698-99 (E.D. Pa. 1995) ("It is well established that verbal harassment or threats will not . . . without some reinforcing act accompanying them, state a constitutional claim."). Talley's complaint, as pled, suggests that Lt. Pressley only verbally harassed him and encouraged another prisoner to verbally harass him. Thus, Talley has not stated a plausible Eighth Amendment claim against Lt. Pressley based upon this behavior.

---

[37] Compl. ¶ 28.
[38] *Id.* ¶ 29.

8

Likewise, he cannot maintain his claim against Major Clark, as nothing in the complaint suggests that she was deliberately indifferent to any unconstitutional conduct by Lt. Pressley. *See Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042 (2015).

Talley also cannot maintain his claim that Lt. Pressley violated his Eighth Amendment rights by withholding his property. His allegations that he was not permitted to keep his legal property with him after being moved from the POC simply do not state an Eighth Amendment claim because "he was not deprived of the minimal civilized measure of life's necessities." *Atwell v. Metterau*, 255 F. App'x 655, 658 (3d Cir. 2007) (per curiam) ("[Plaintiff's] allegations regarding the deprivation of his property did not state an Eighth Amendment claim . . . .").

### 2. Fourteenth Amendment Claims

Talley also asserts an equal protection violation "under the 'class-of-one' theory". He alleges the denial of his right "to have his weekly meeting with PRC."[39] "[T]o state a claim for "class of one" equal protection, a plaintiff must at a minimum allege that he was intentionally treated differently from others similarly situated by the defendant and that there was no rational basis for such treatment." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008). Talley's allegation, which forms the sole basis for his equal protection claim, amounts to nothing more than a formulaic recitation of the elements of a "class of one" equal protection claim. Accordingly, the complaint does not state an equal protection claim as pled. *See Perano v. Twp. Of Tilden*, 423 F. App'x 234, 238–39 (3d Cir. 2011) ("Without more specific factual allegations as to the allegedly similarly

---

[39] Id. ¶ 30.

9

situated parties, he has not made plausible the conclusion that those parties exist and that they are like him in all relevant aspects."); *Carson v. Mulvihill*, 488 F. App'x 554, 563 (3d Cir. 2012) (finding equal protection claim not pled where plaintiff failed to "allege facts showing that he was similarly situated to the inmates who received wheelchair footrests, crutches and canes, or that there was no rational basis for his different treatment").

Next, Talley alleges that the defendants violated his due process rights under the Fourteenth Amendment by denying him the right to see and speak to the PRC before leaving the POC for the DTU.[40] Nothing in the complaint, however, suggests that he has a protected liberty interest in being allowed to stay in the POC. *See Angle v. Murin*, No. 1:12-249, 2014 WL 1316105, at *1 (W.D. Pa. Mar. 28, 2014) (citations omitted). Therefore, Talley cannot maintain his due process claim against the defendants at this time.

### D. Intentional Infliction of Emotional Distress

Talley also asserts a claim under state law for intentional infliction of emotional distress against Lt. Pressley. Because we dismiss Talley's federal claims, we do not exercise supplemental jurisdiction over his state law claim. Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required. This means

---

[40] *Id.* ¶ 31.

10

that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)). Although Talley alleges that he is incarcerated at SCI Fayette, he does not allege the state of his domicile prior to incarceration. *See Robinson v. Temple Univ. Health Servs.*, 506 F. App'x 112, 115 (3d Cir. 2012) (per curiam) (explaining that "[t]he traditional view is that a prisoner remains a citizen of the state of which he was a citizen before his imprisonment" and that other circuits "follow a rebuttable presumption model; those courts presume that a prisoner does not change his domicile by being incarcerated in a new state, but they permit him to rebut that presumption"). The complaint is devoid of information regarding the defendants' domiciles.[41] Thus, Talley has failed to meet his burden of demonstrating that this Court has subject matter jurisdiction over his intentional infliction of emotional distress claim. *See Lincoln Ben. Life Co.*, 800 F.3d at 105 ("The burden of establishing federal jurisdiction rests with the party asserting its existence." (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006))).

## IV. CONCLUSION

Because Talley has not stated plausible claims for relief, we shall dismiss the complaint as frivolous.

/s/TIMOTHY J. SAVAGE

---

[41] It also does not appear that the amount in controversy exceeds $75,000.00. For damages, Talley request "compensation for the costs he has incurred in prosecuting this civil action, and, if judge and/or jury sees fit, another $5,000.00 to $7,000.00 for each cognizable claim in this Complaint." Compl. ¶ 35. Talley's complaint sets forth five separate claims for relief. Thus, at most, Talley appears to seek $35,000.00 in damages.

11